IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DAVID E. TOPPER,                )
                                )
         Plaintiff,             )
                                )  CIVIL ACTION
v.                              )
                                )  No. 12-1119-JWL
CAROLYN W. COLVIN,[1]           )
Acting Commissioner of Social Security,  )
                                )
         Defendant.             )
_____ )

MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security disability(SSD) benefits and Supplemental Security income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error in the Commissioner's final decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

I.     Background

---

[1]On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Colvin is substituted for Commissioner Michael J. Astrue as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff applied for SSD and for SSI on April 8, 2009, alleging disability beginning August 16, 2007. (R. 9, 146-54). The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (R. 9, 73-76, 101-02). Plaintiff's request was granted, and Plaintiff appeared with counsel for a hearing before ALJ James Harty on June 30, 2010. (R. 9, 29-30). At the hearing, testimony was taken from Plaintiff and from a vocational expert. (R. 9, 29-72). On July 30, 2010, ALJ Harty issued his decision in this case finding that Plaintiff has the residual functional capacity (RFC) to perform a range of sedentary work but with significant exertional and nonexertional limitations. (R. 9-18). Consequently, he determined that Plaintiff is unable to perform his past relevant work, but that considering his age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. 18-20). Therefore, he determined that Plaintiff is not disabled within the meaning of the Act, and denied the applications for disability benefits. (R. 20). Plaintiff sought Appeals Council review of the decision and submitted a letter explaining the errors allegedly made in the decision. (R. 144-45). The Council considered the letter but found no reason under the agency's rules to review the decision, and denied the request for review. (R. 1-5). Therefore, the ALJ's decision became the final decision of the Commissioner; (R. 1); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006); and Plaintiff now seeks judicial review. (Doc. 1).

II.   **Legal Standard**

The court's jurisdiction and review are guided by the Act. Weinberger v. Salfi, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d 1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C. § 405(g)). Section 405(g) of the Act provides for review of a final decision of the Commissioner made after a hearing in which the plaintiff was a party. It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is disabled only if he can establish that he has a physical or mental impairment which prevents him from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least twelve months. Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A)); accord, Lax, 489 F.3d at 1084. The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy. 42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step sequential process to evaluate disability. 20 C.F.R. §§ 404.1520, 416.920 (2010);[2] Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt.

---

[2]Because the Commissioner's decision was issued on July 30, 2010, all citations to the Code of Federal Regulations in this opinion refer to the 2010 edition of 20 C.F.R. Parts 400 to 499, revised as of April 1, 2010, unless otherwise indicated.

P, App. 1). Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process--determining whether claimant can perform past relevant work; and whether, considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy within Plaintiff's RFC.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims that the ALJ failed to assess RFC properly in accordance with Social Security Ruling (SSR) 96-8p and failed to conduct a credibility analysis properly in accordance with SSR 96-7p and the requirements of Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987).  The Commissioner argues that the ALJ properly evaluated the credibility of Plaintiff's allegations, that he properly assessed RFC in accordance with the law, and that substantial record evidence supports both his credibility determination and his RFC assessment.  The court finds no error in the ALJ's credibility determination or in his RFC assessment.  Because determination of the credibility of a claimant's allegations

of symptoms is a necessary part of every RFC assessment, the court first considers Plaintiff's arguments regarding the credibility determination.

## III. Credibility

Plaintiff claims that the ALJ "failed to give proper weight to the testimony of Mr. Topper" (Pl. Br. 22), that the credibility analysis was short and vague, id. at 23, and that "the ALJ's analysis was short on concrete reasons Mr. Topper's testimony should be disregard[ed]." Id. at 24. The Commissioner argues that the ALJ complied with the requirements of Luna and SSR 96-7p in evaluating the credibility of Plaintiff's allegations of symptoms and properly explained the rationale behind his credibility determination (Comm'r Br. 12-14), and that substantial record evidence supports that determination. Id. at 15-17. The court agrees with the Commissioner.

### A. The Standard for Evaluating Credibility

An ALJ's credibility determinations are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173. Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993) ("deference is not an absolute rule"). "However, '[f]indings as to credibility should be closely and

6

affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173 (same).

As the parties agree, the Tenth Circuit, in Luna, provided a three-part framework for evaluating the credibility of a claimant's allegations of symptoms resulting from his impairments:

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability. Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain. This court has stated: The framework for the proper analysis of Claimant's evidence of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

Thompson, 987 F.2d at 1488(citations and quotation omitted) (addressing pain).

The court recognized a non-exhaustive list of factors which should be considered in evaluating credibility. Luna, 834 F.2d at 165-66; see also 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2001). These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

7

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).

The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating credibility which overlap and expand upon the factors stated by the court: Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms. 20 C.F.R. § 404.1529(c)(3)(i-vii).

### B. The ALJ's Credibility Findings

The ALJ's credibility analysis occupied the greater part of four pages in his decision. (R. 14-17). In that analysis, he explained the regulatory framework for evaluating credibility, determined that Plaintiff has shown symptom-producing impairments to which there is at least a loose nexus with Plaintiff's allegations of symptoms, and determined that he must consider all of the evidence to evaluate the credibility of Plaintiff's allegations. (R. 14). He summarized Plaintiff's allegations and the evidence relating to them, and explained the factors he found that tend to negate or to support the allegations. (R. 15-16).

The ALJ specifically expressed five factors discounting the credibility of Plaintiff's allegations and one factor supporting a finding of credibility. Id. The factor that he found supporting credibility was that Plaintiff "has a steady work record . . .,

8

showing good motivation for employment." Id. at 16. The factors that he found detract from Plaintiff's credibility were: (1) the "activities described on [Plaintiff's] function reports greatly exceed the activity levels described during testimony," (2) Plaintiff utilizes only ice, heat, over-the-counter ibuprofen, and a TENS unit for his pain, (3) Plaintiff denied side effects from medication, (4) Plaintiff alleged an inability to bend to pick up objects from the floor which is inconsistent with his demonstrated ability on examination to bend and touch the floor, (5) Plaintiff's testimony that he is unable to use his hands to hold objects or to type is contradicted by his statements that he plays on the computer daily and helped his landlord put doorknobs and locks on rental houses, and his daughter's report that he plays cards with his grandson. (R. 15). The ALJ also discussed the observations of the interviewing claims representative, and the third-party statements of Plaintiff's wife and daughter. Id. 16-17. Finally, he concluded his analysis and stated his credibility finding:

> In sum, the claimant simply alleges a greater degree of debilitation than what objective evidence can support. There certainly is some evidence of back, neck, and shoulder pain, but post surgical cervical radiographs have not shown stenosis or nerve root encroachment (exhibit 16F/9 [(R. 509)]). An MRI of the lumbar spine was considered normal (exhibit 17F/39 [(R. 565)]). The most recent examination findings have shown normal gait and station, normal strength, and normal range of motion in the extremities (exhibit 20F/40,43 [(R. 720, 723)]). The claimant's neck and shoulder pain is not such as to prevent ambulation, sitting, standing, reaching with the right upper extremity, and many postural maneuvers, or to prevent him from being able to complete a fairly full range of activities of daily living. His impairments do, though, reduce his ability to stand, walk, lift and carry. A reduction to work at the sedentary exertional level with some further appropriate work restrictions is therefore warranted. There are some reasonable limitations on what the claimant is capable of physically

9

performing, and the entire world of work is not open to the claimant. These limitations, however, have been accounted for in the determination of the claimant's residual functional capacity.

The undersigned finds that the limitations and pain levels described during testimony are not fully credible when considering the daily activities described in function reports, the improvement documented in the medical records, and the claimant's discontinuance of prescription pain medications, both addictive and non-addictive, with current ability to obtain pain control through a TENS unit and over-the-counter medication.

(R. 17).

### C. Analysis

Contrary to Plaintiff's argument, the court finds the ALJ's credibility analysis is neither short nor vague. As noted above, the ALJ provided a thorough discussion and analysis and explained and reiterated the reasons for discounting Plaintiff's allegations. The ALJ did not merely "disregard" Plaintiff's allegations as Plaintiff suggests, but he provided at least five "concrete reasons" for discounting them.

Plaintiff appeals to the principle that the ability to perform work or household tasks sporadically "does not establish that a person is capable of engaging in substantial gainful activity." (Pl. Br. 23) (quoting Thompson, 987 F.2d at 1489). However, the ALJ did not assert that Plaintiff's activities suggest the ability to perform gainful activity. Rather, he found that Plaintiff's allegations of symptoms were not credible, in part, because the activities reported by Plaintiff in his function reports "greatly exceed the activity levels described during testimony." (R. 15). As the ALJ found, this inconsistent

reporting is a factor tending to establish that Plaintiff's allegations of symptoms are not credible.

Plaintiff also argues that "[c]ontrary to the ALJ's statement, the medical records did not show his pain was controlled by medication." (Pl. Br. 24). As Plaintiff's Brief suggests, the ALJ noted that Plaintiff had discontinued "prescription pain medications, both addictive and non-addictive, with current ability to <u>obtain pain control</u> through a TENS unit and over-the-counter medication." (R. 17) (emphasis added). This finding is a reiteration of the ALJ's earlier discussion with regard to factors two and three above:

> When filing his request for reconsideration, the claimant was using prescription pain medications, including Flexeril and Lortab, and using Trazodone for sleep (exhibit 9E/4 [(R. 231)]). The claimant testified that he currently utilizes only over-the-counter Ibuprofen and a TENS unit as well as ice and heat for pain. He stated that he began using the TENS unit 2 weeks after the surgery. He reported that he wears the TENS unit continuously during the daytime and that it is helpful. He denied any side effects from medication. The fact that the claimant has been able to discontinue all prescription medications and rely on over-the-counter medications, which are generally considered a mild form of pain relief, and a TENS unit, which he stated is effective, confirm physician treatment notes of improvement and decreased pain levels as a result of surgery and physical therapy. This is not consistent with the claimant's testimony and the third party statements described below asserting increased pain levels. The overall evidence suggests that the claimant's pain and limitations have significantly improved as a result of treatment and would not be preclusive of sedentary fulltime work.

(R. 15). The significance of the ALJ's statement is not that Plaintiff's pain is "controlled" with medication in the absolute sense of "taken away," but that earlier Plaintiff was using significant pain medications, some of which were addictive, and that his pain and limitations have since improved and he has been able to address his pain with mild

11

medication and with an effective TENS unit. The law does not require that a disability claimant be pain free to be found not disabled. See, Ray, 865 F.2d at 225 ("disability requires more than mere inability to work without pain"); Gossett, 862 F.2d at 807 (same); Brown v. Bowen, 801 F.2d 361, 362-63 (10th Cir. 1986) (same). Plaintiff does not allege error in the ALJ's evaluation of the facts as quoted above. The court finds that Plaintiff has shown no error in the credibility determination.

## IV. RFC Assessment

Plaintiff claims the ALJ failed to properly assess RFC pursuant to SSR 96-8p and did not relate the RFC he assessed to specific medical evidence or testimony. (Pl. Br. 15). He argues that the ALJ did not provide a "narrative discussion of how evidence supports each [RFC] conclusion, and cite specific medical and non-medical evidence," and "did not cite to any medical opinion to substantiate his [assessment of] physical limitations." Id. at 16. Over approximately the next five pages of his Brief, Plaintiff cites record evidence and explains how in his view "the medical records as a whole would support a less than sedentary RFC." Id. at 17. The Commissioner argues that the ALJ properly assessed Plaintiff's RFC, and supported his findings with medical and non-medical evidence. (Comm'r Br. 17). She argues that the ALJ is not required to provide a pinpoint citation to medical evidence for each RFC finding, but that the ALJ did provide a discussion of the evidence upon which he relied in making his RFC assessment. Id. at 18-21. She points out that the ALJ assessed a less-than-sedentary RFC and found that Plaintiff cannot perform the full range of sedentary work, but that the vocational expert

testified that jobs exist in significant numbers in the national economy that can be performed by an individual with the RFC assessed for Plaintiff. Id. at 22.

### A.     The Standard for Assessing RFC

RFC is an assessment of the most a claimant can do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); see also, White, 287 F.3d at 906 n.2. It is an administrative assessment, based on all of the evidence, of how plaintiff's impairments and related symptoms affect his ability to perform work-related activities. Id.; see also SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 126 (Supp. 2012) ("The term 'residual functional capacity assessment' describes an adjudicator's findings about the ability of an individual to perform work-related activities."); SSR 96-8p, West's Soc. Sec. Reporting Serv., 144 (Supp. 2012) ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s) . . . may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities.").

Although an ALJ is not an acceptable medical source qualified to render a medical opinion, it is "the ALJ, not a physician, [who] is charged with determining a claimant's RFC from the medical record." Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004). "And the ALJ's RFC assessment is an administrative, rather than a medical determination." McDonald v. Astrue, 492 F. App'x 875, 885 (10th Cir. 2012) (citing SSR 96-5p, 1996 WL 374183, at *5 (July 1996)). Because an RFC assessment is made based on "all of the evidence in the record, not only the medical evidence, [it is] well

within the province of the ALJ." Dixon v. Apfel, No. 98-5167, 1999 WL 651389, at *2 (10th Cir. Aug. 26, 1999). Moreover, the final responsibility for determining RFC rests with the Commissioner. 20 C.F.R. §§ 404.1527(e)(2), 404.1546, 416.927(e)(2), 416.946.

The Commissioner issued SSR 96-8p "[t]o state the Social Security Administration's policies and policy interpretations regarding the assessment of residual functional capacity (RFC) in initial claims for disability benefits." West's Soc. Sec. Reporting Serv., Rulings 143 (Supp. 2012). That ruling includes narrative discussion requirements for the RFC assessment. Id. at 149. The discussion is to cite specific medical facts and nonmedical evidence to describe how the evidence supports each conclusion, discuss how the plaintiff is able to perform sustained work activities, and describe the maximum amount of each work activity the plaintiff can perform. Id. The discussion must include consideration of the credibility of plaintiff's allegations of symptoms and consideration of medical opinions regarding plaintiff's capabilities. Id. at 149-50. If the ALJ's RFC assessment conflicts with a medical source opinion, the ALJ must explain why he did not adopt the opinion. Id. at 150.

### B. The ALJ's RFC Assessment

The ALJ's credibility analysis as discussed above was included within his RFC assessment. As noted above, in his credibility analysis the ALJ thoroughly summarized, discussed, and explained the record evidence, both medical and non-medical, relevant to his credibility determination. (R. 14-17). Thereafter, he completed his summarization of

14

the evidence, including the medical opinion evidence, and explained the remainder of his RFC assessment. (R. 17-18).

Specifically, he noted that no treating medical source had said that Plaintiff was disabled or had suggested work restriction. Id. at 17. He noted that a single decisionmaker (SDM) had suggested an RFC which was affirmed by Dr. Siemsen and which limited Plaintiff to light work further restricted to no ladder, rope, or scaffold climbing, only occasional ramp and stair climbing, and only occasional overhead lifting. Id. (citing Exs. 9F, 15F (R. 358-65, 499)). In the next four paragraphs, the ALJ explained why he did not accept Dr. Siemsen's opinion and explained the bases and rationale for his RFC assessment which was for a range of <u>sedentary work</u> further limited by a sit and stand option requiring that Plaintiff stand for 30 minutes after sitting for 2 hours, by the need to avoid pushing and pulling with the left upper extremity, by the inability to climb ropes, ladders, or scaffolds, by the ability to perform all other postural activities only occasionally, and by the need to <u>avoid</u> gross handling and overhead reaching with the left upper extremity and to avoid concentrated exposure to vibration. (R. 13-14). Because the court finds the ALJ's explanation unusually detailed and clear regarding the basis for his RFC assessment, it reproduces that explanation in its entirety here without attempting a summarization:

> The undersigned finds that later evidence [(entered into the record after Dr. Siemsen affirmed the SDM decision)], in particular findings of rotator cuff tear requiring recent surgery and giving some credibility to the claimant's testimony of ongoing neck pain, shows that the claimant should be restricted to sedentary work. Substantial weight has been given to the

recommendations that the claimant avoid ladder, rope, or scaffold climbing and more than occasional stair and ramp climbing, but the undersigned has concluded that the subsequent findings of left rotator cuff tear shows that the claimant must avoid all overhead reaching with the left upper extremity and has additional postural and environmental limitations.

The claimant testified that he can sit up to 2 hours at a time and stand up to 30 minutes at a time. Although he asserted that he cannot do this continually throughout an 8-hour workday, the daily activities described on function reports (taking his children to and from school each day, spending time with his father at his shop, using the computer, helping his wife with household chores, cooking out, helping his landlord install knobs and locks on rental houses, preparing simple meals, doing small household repairs, shopping, and attending tractor club meetings (exhibits 3E; 8E [(R. 185-96, 216-27)])) are not inconsistent with 2 hours sitting alternated with standing/walking for 30 minutes throughout an 8-hour workday. These activity levels also suggest that the claimant is capable of sustaining an 8-hour workday at sedentary levels.

The claimant continues to be limited in the ability to lift and carry due to the effects of his bypass surgery, his neck surgery, and his recent rotator cuff surgery. The claimant admittedly can lift up to 10 pounds with the right upper extremity. The evidence suggests that after completion of physical therapy from his recent surgery, the claimant will be able to lift up to 10 pounds on an occasional basis with the left upper extremity. He is limited to lifting only nominal weight on a frequent basis.

During a consultative medical evaluation on June 19, 2009, the claimant could bend to touch the floor. He had a free flowing legible signature and no difficulty getting off and on the examining table, heel and toe walking, squatting, arising from a sitting position, or hopping. He was able to pick up a coin, open a door, and fasten a button (exhibit 5F [(R. 320-24)]). This would suggest that the claimant is able to occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl despite neck and shoulder surgery and considering his bypass surgery. The claimant must avoid pushing and pulling with the upper left extremity due to his recent rotator cuff repair. The claimant is precluded from all ladder, rope, or scaffold climbing due to the effects of his neck and shoulder surgery. He must avoid gross handling and overhead reaching with the left upper extremity as a result of his shoulder surgery, and avoid concentrated exposure to vibration due to neck and shoulder surgery. Although the claimant has alleged

16

> problems with memory, this has not been observed by any other medical source. He has retained his commercial driver's license, indicating that he considers himself mentally capable of semi-skilled work such as driving a truck.

(R. 17-18).

### C. Analysis

Plaintiff's allegation of error in the ALJ's RFC assessment cannot stand in the face of the ALJ's discussion of RFC in finding number five at pages five through ten of the decision at issue here. (R. 13-18). Plaintiff's assertion that the RFC assessed "is unrelated to any specific medical evidence or testimony" (Pl. Br. 15), is belied both by the portion of the decision quoted above and by the remainder of the decision which was summarized and discussed earlier in this opinion. In light of the clear explanation given by the ALJ and quoted above, Plaintiff's argument that the ALJ did not provide a "narrative discussion of how evidence supports each [RFC] conclusion, and cite specific medical and non-medical evidence," and "did not cite to any medical opinion to substantiate his [assessment of] physical limitations" (Pl. Br. 16), reflects Plaintiff's clear misunderstanding of the standard for RFC assessment as presented above. In asserting that the ALJ must provide a source for the physical limitations assessed, and that the ALJ failed to indicate how the medical evidence and opinions support the limitations assessed, Plaintiff appears to be arguing that each RFC limitation assessed must be specifically linked to a medical opinion or to particular medical evidence upon which it is based. That is not the case. "[T]here is no requirement in the regulations for a direct

correspondence between an RFC finding and a specific medical opinion." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012) (citing Howard, 379 F.3d at 949; Wall, 561 F.3d at 1068-69). As the Commissioner points out in his brief, the narrative discussion required by SSR 96-8p does not require citation to a medical opinion, or even to medical evidence in the administrative record for each RFC limitation assessed. Castillo v. Astrue, No. 10-1052, 2011 WL 13627, *11 (D. Kan. Jan. 4, 2011). "What is required is that the discussion describe how the evidence supports the RFC conclusions, and cite specific medical facts and nonmedical evidence supporting the RFC assessment." Id. See also, Thongleuth v. Astrue, No. 10-1101-JWL, 2011 WL 1303374, *13 (D. Kan. Apr. 4, 2011). There is no need in this case, or in any other, for the Commissioner to base the limitations in his RFC assessment upon specific statements in medical evidence or in opinions in the record. The ALJ's decision need only be "sufficiently articulated so that it is capable of meaningful review." Spicer v. Barnhart, 64 F. App'x 173, 177-78 (10th Cir. 2003). That criteria is clearly met here.

Plaintiff's argument that "the medical records as a whole would support a less than sedentary RFC" (Pl. Br. 17), does not require a different conclusion because as the Commissioner points out the RFC assessed by the ALJ is a less-than-sedentary RFC. Moreover, to the extent that the evidence might also support a finding that Plaintiff is disabled, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. [The court] may not displace the agency's choice between two fairly

18

conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citation, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966) ("the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence"). In order to show error in the ALJ's findings Plaintiff must do more than show that record evidence might support a different conclusion. He must show that the evidence does not support the ALJ's findings. He has not done so in this case.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 6th day of June 2013, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**